Fuld, J.
This taxpayers’ action, brought pursuant to section 51 of the Greneral Municipal Law, challenges the constitutionality of article 126 of the Education Law and seeks to enjoin the Board of Supervisors of Rensselaer County from issuing and selling notes and bonds to finance the county’s share of the capital costs of the Hudson Valley Technical Institute pursuant to a resolution adopted by the board. Following the filing of their respective answers, the defendants and the intervenors-defendants moved for judgment on the pleadings. The court at Special Term granted such motions, dismissed the complaint insofar as it sought injunctive relief and rendered judgment declaring article 126 constitutional and the resolution of the Board of Supervisors valid. From the judgment thereafter entered, the plaintiffs appeal directly to this court, as of right, under section 588, subdivision 4, of the Civil Practice Act.
Enacted in 1948, article 126 of the Education Law provides for the establishment and financing of two-year community colleges (Education Law, §§ 6301-6307). In part, the statute authorizes a county — as well as a city, an intermediate school district or a school district approved by the State University trustees — to act as a “local sponser ” and propose, for the approval of the board of trustees of the State University, a plan for a community college within its territorial limits. Capital costs, section 6304 prescribes, shall be borne equally by the state and by the local sponsor, and operating costs, one third by the state, one third by the local sponsor and the remaining *420 one third by the students attending, in the form of tuition and fees. And section 6305 recites that, “ In addition to admitting residents of its own local sponsor * * % each community college shall, within the quota and under the conditions prescribed by the state university trustees, admit non-resident students and out-of-state students.”
According to the complaint before us, the County of Rensselaer in 1953 established the Hudson Valley Technical Institute as a community college pursuant to the provisions of article 126 of the Education Law. Four years later, in July of 1957, the County Board of Supervisors adopted a resolution authorizing the acquisition of real property and the construction and equipment of buildings thereon at a total estimated cost of $3,260,250; such cost was to be financed by the receipt of state financial aid of $1,630,125 and by the issuance of county bonds and notes for the balance. The complaint goes on to allege the provision of section 6305, quoted above, requiring community colleges to admit nonresident and out-of-state residents within the quota fixed and under the conditions prescribed by the State University trustees. It further recites that the ratio of such nonresident and out-of-state residents to residents in attendance at the Technical Institute for 1956-1957 was about 2 to 1 and that such nonresidents have not, and could not be, charged the allocable portion of the county’s share of the capital costs of the Institute.
Alleging in addition that the attendance of nonresident students at the college has “no reasonable relation” to the public welfare or benefit of Rensselaer County and that “ the predominant purpose ” of establishing a college was for the primary benefit of residents of counties other than Rensselaer, the plaintiffs ask that both the Education Law provision and the resolution of the county be declared invalid and unconstitutional. More specifically, the' plaintiffs claim that the statute and the action taken under it violate section 2 of article VIII of the New York State Constitution, which provides that “No county * * * shall contract any indebtedness except for county * * * purposes ”.
In essence, it is the plaintiffs’ contention that the system of financing these community colleges is unconstitutional because it does not provide for the apportionment of capital costs on *421 the basis of the ratio of nonresident to resident students and that the college may be required to admit a disproportionate number of nonresidents. The problems suggested by the points raised by the plaintiffs relate rather to the propriety of specific applications of article 126 than to the validity of the statute itself. In our view, the only question for decision is whether a county-established college may be regarded as an institution operated for a proper “ county purpose ” within the sense of section 2 of article VIII of the Constitution. If the purpose sought to be achieved, the establishment and maintenance of a community college within county territory, is deemed a county purpose, then it matters not that there is a possibility, or even a probability, that more than one half of the student body may reside outside of the county.
Education has long been regarded as serving a public and governmental purpose (see Matter of College of City of N. Y. v. Hylan, 205 App. Div. 372, affd. 236 N. Y. 594; Stuart v. School Dist., 30 Mich. 69, 75 [per Cooley, J.]; cf. Union Free School Dist. v. Town of Rye, 280 N. Y. 469), and a proper local municipal function is unquestionably served by higher educational institutions authorized by municipal divisions of the state. The ownership and operation of public facilities serving the welfare of a municipality are not deprived of their municipal character because they may serve a larger interest as well. (See, e.g., Gordon v. Cornes, 47 N. Y. 608, 613-614; Sun Print. & Pub. Assn. v. Mayor, 152 N. Y. 257, 267; Hesse v. Rath, 249 N. Y. 436, 438.)
The constitutional provision that no county shall contract any indebtedness except for county purposes, is aimed at prohibiting local indebtedness for expenditures which serve no local purpose. It does not, and was not designed to, enjoin a complete separation of local municipal interests from all others. The Constitution may not be read to prevent provision for community colleges which will make their facilities fully useful by opening them to students who reside outside of the county. "Where there is, as here, a primary local interest, it is more than sufficient to support the propriety of the municipal purpose even though a larger state interest is served (see Matter of Tobin v. La Guardia, 290 N. Y. 119), and the courts do not insist upon precise measurement of the respective interests. *422 (Cf. Matter of Bryant, 152 N. Y. 412; Rivet v. Burdick, 255 App. Div. 131.)
It was the county itself which set in motion the plan for the establishment of the Institute and it was the county which took title to the land purchased and which became the owner of the buildings and equipment. The assets of the Institute belong to the county, its operation and management are by the county and its board of trustees are all residents of the county, the majority of five being appointed by the County Board of Supervisors, the remaining four by the Governor (Education Law, § 6306, subd. 1). In addition, as the court at Special Term observed, the residents of Rensselaer County are eligible for entrance to community colleges in other counties, in which counties the residents may also be less than 50% of the student body. And, quite apart from this, the expenditure of Rensselaer County here involved is for an important county facility having a lasting value obtained by the county at one half of its full cost. The project was planned with regard to the clearly foreseeable needs of the future. There is an optimum size for an educational plant, particularly one for training in technical fields, below which its operation would be unduly costly. Such matters were for the Board of Supervisors of the county and the trustees of the State University, and no basis is shown for interference with their judgment.
The possibility that a county might undertake establishment of a college for which it has no need, or which is in excess of its need, can not affect the statute’s constitutionality. No provision of the Education Law would sanction such county action and, certainly, no statute will be held invalid merely because some unauthorized action might be attempted under it. (See Headley v. City of Rochester, 272 N. Y. 197, 204.) The fact that the sponsoring county’s residents at any particular time constitute less than half of the student body of the college neither justifies a determination that the county expended funds in excess of its own local interest nor warrants a charge that article 126 required or authorized the expenditure of county funds for other than county purposes. The conclusion is clear that the provisions of the statute are constitutional and that the resolution of the Board of Supervisors is valid.
*423 The judgment appealed from should be affirmed, without costs.
Chief Judge Conway and Judges Desmond, Dye, Froessel, Van Voorhis and Burke concur.
Judgment affirmed.