Williams, J.
 

 Two controlling questions are presented: (1) Was a motion for a new trial necessary for a review of the judgment, and (2) If not, did the Court of Appeals commit prejudicial error' in rendering the judgment of reversal.
 

 Before considering the effect of not filing a motion for a new trial, it is well to point out that the action of the trial court in taking the case from the jury and rendering judgment for the defendant, presents exactly the same question as if a verdict had been directed and judgment entered for the defendant thereon. Either method may be employed. In discussing the question we shall, to some extent, speak of the method in which the directed verdict is employed for, according to the reported decisions, that method seems to have been more commonly used in this jurisdiction.
 

 A motion for a new trial is not always essential as a basis for review. Judgments challenged for error of law in empanelling the jury, in the admission and rejection of evidence and in the charge of the court, may be reviewed without a motion for a new trial.
 
 Earp
 
 v.
 
 Pittsburg, Ft. Wayne & Chicago Rd. Co.,
 
 12
 
 *25
 
 Ohio St., 621, and
 
 State
 
 v.
 
 Langenstroer,
 
 67 Ohio St., 7, 13, 65 N. E., 152.
 

 In
 
 Lockwood
 
 v.
 
 Krum, Admr.,
 
 34 Ohio St., 1, the court M the first paragraph of the syllabus used this language: “Where a court, upon the trial of questions of fact, states its conclusions of fact separately from its conclusions of law, it is not necessary to the right 'of a party to have the decision reviewed - on questions of law arising upon the facts found, that he shordd have made a motion for a new trial.” Likewise in the case of
 
 In re Estate of Hinton,
 
 64 Ohio St., 485, 60 N. E., 621, the court used this language in the syllabus: “Where the facts are conceded or agreed upon in a trial, the judgment of the court' rendered upon such facts, may be reviewed in a higher court by petition in error, without a motion' for a new trial. ’ ’
 

 It is definitely settled by these authorities that rulings on questions of law made in the course of the trial may be reviewed without the filing of a motion for a hew trial. In passing upon a motion for directed verdict, or in taking the case from the jury and entering judgment, as was done herein, the trial court determines merely a question of law, and therefore the same rule should apply as in other instances in which questions of law are determined during the trial.
 

 The difficulty in the instant case arises from the interpretation of the fifth paragraph of the syllabus in
 
 Jacob Laub Baking Co.
 
 v.
 
 Middleton,
 
 118 Ohio St., 106, 160 N. E., 629, which reads:
 

 “While a motion for a new trial is necessary to determine the weight of the evidence, it is not necessary in the application, by the court, of the law to the facts on a motion for a directed verdict. The defeated party has the right to rest solely on his motion for a directed verdict; and, although he may do so, he is not compelled to ask for a new trial which he may not desire. ’ ’’
 

 
 *26
 
 When we look to the part of the opinion of Judge J ones in which he deals with the fifth paragraph of the syllabus, we find this language at page 119:
 

 “The precise question that we have in this case, the necessity of a motion for a new trial where a directed verdict has been asked for lack of proof of an essential fact, has not been determined by this court in any reported syllabus. However, it was necessarily determined in the case of
 
 State
 
 v.
 
 Wirick,
 
 81 Ohio St., 343, 90 N. E., 937. The reported case does not disclose whether a motion for a new trial was filed by Wirick in the Probate Court, but the original papers and briefs on file in this court indicate that no such motion was filed. The judge delivering the opinion, in alluding to the necessity of such a motion, said, at page 346 (90 N. E., 938): ‘If the question here were whether the judgment below was against the weight of the evidence, a motion for a new trial would be necessary; but the question being whether the trial court properly applied the law to the facts, the absence of a motion for a new trial is not material. ’
 

 “Where therefore, the trial court is not called upon to weigh the evidence, but to apply the law where the ultimate fact is not in dispute, the case assumes a legal phase, and no motion for a new trial need be filed.”
 

 This language states the rule clearly and definitely, and makes it applicable to any party aggrieved by a ruling on a motion for a directed verdict. Following this quotation, Judge Jones makes this statement: “There is an additional and very cogent reason why the defendants below were not required tortile such a motion. While, as a measure of precaution the defendants might have done so, they could have elected to stand solely upon their motions for a directed verdict.” It is then pointed out in the opinion that a defendant may rest his case upon the ruling on the mo
 
 *27
 
 tion for -a directed verdict, and should not he required to ask for a new trial, which he may not desire.-
 

 The party seeking a review, in that case, was the defendant and the only relief sought was a final judgment in its favor.. In the instant case the plaintiff sought relief in the Court of Appeals on the ground that it was error to enter judgment for defendant as a matter of law. The only way she could get that relief was by being granted a new trial. The contention of defendant’s counsel is that in this jurisdiction “ a plaintiff and a defendant stand on a different footing insofar as what may be done by way of granting relief to a party because of an erroneous ruling by the trial court.” In other words to have a review of such a ruling the plaintiff would be required to file a motion and the defendant would not.
 

 Such a contention, if it prevailed, would lead to discrimination as between plaintiffs and defendants generally, or even to discrimination as between a party plaintiff and a party defendant in the same case in certain instances. For example, a plaintiff properly joins two independent causes of action in his petition in a suit against a single defendant. On trial the defendant moves for a directed verdict on both causes of action. The motion is sustained as to the first cause of action and overruled as to the second. Thereupon the jury returns a verdict in favor of the plaintiff on. the second cause of action. Neither party files a motion for a new trial and, after judgment is entered accordingly on both causes of action, each party appeals. If a motion for a new trial is required of the plaintiff but not of the defendant, the former would obtain a review and the latter not.
 

 It has been held that a statute, which discriminates between persons similarly situated, by not allowing an appeal on equal terms, denies the equal protection of thé laws.
 
 Hecker
 
 v.
 
 Illinois Central Co.,
 
 231 Ill., 574,
 
 *28
 
 83 N. E., 456;
 
 People v. Sholem,
 
 238 Ill., 203, 87 N. E., 390;
 
 Funkhouser
 
 v.
 
 Randolph,
 
 287 Ill., 94, 122 N. E., 144;
 
 State, ex rel. Owen, Atty. Genl.,
 
 v.
 
 Wisconsin-Minnesota Light & Power Co.,
 
 165 Wis., 430, 162 N. W., 433;
 
 In re City of Rochester,
 
 224 N. Y., 386, 121 N. E., 102; 16 Corpus Juris Secundum, 1126, Section 562
 
 (a).
 

 There is nothing in the statutes of this state that prescribes unequal terms with regard to appeal by the respective parties. It is fundamental that the state courts will not apply a valid statute so as to work such discrimination and inequality as would invalidate the statute if those vices were contained in it. The applicable statutes are valid and constitutional and should not in .their application be given an unconstitutional operation. Consequently the same rule must be applied to plaintiff and defendant.
 

 Adhering to former holdings, this court concludes that a motion for a new trial is not a necessary prerequisite to a review of a judgment for alleged error in directing' a verdict or taking the case from the jury and entering the judgment.
 

 Did the Court of Appeals err in reversing the judgment of the trial court? If the trial court was justified in taking the case from the jury and rendering judgment for the defendant, then the question should be answered in the affirmative. Counsel for defendant maintain the trial court was justified in its course for two reasons: (a) Maynard did not “sustain an ‘injury’ as that term is used in the Constitution and in Section 1465-68, General Code, and construed by this court, particularly in
 
 Malone
 
 v.
 
 Industrial Commission,
 
 140 Ohio St., 292,” and (b) there was no “competent evidence” that Maynard’s injury, if any there was, was the proximate cause of his death.
 

 There is no question that an injury to be the basis of workmen’s compensation must be sustained in the
 
 *29
 
 course of and arise out of the employment, and that to be so sustained and to so arise, the injury must have some causal connection with the employment.
 

 What are the facts? Maynard was engaged with a fellow employee in operating a machine known as a coat calender used for coating fabric. In performing this labor it was necessary to lift rolls of fabric varying in weight from 75 to 1000 pounds. Ordinarily these two men lifted the rolls by hand, but a chain block was available for" that purpose when needed. They worked on a shift that began at midnight and lasted until six o’clock. About three o’clock in the morning of November 11, 1939, it became necessary to place on the machine a roll of fabric weighing between 500 and 600 pounds. Maynard started to lift on one end of this roll; then his fellow workman helped him and together they lifted it onto the truck for the purpose of conveying the roll to the machine. After the lifting Maynard “walked stiff,” holding the lower part of his back. It appears he did not lift on a roll during the remainder of the shift. After he quit working at the end of the shift he “limped like.” When he reached home, he would not eat breakfast. He had an appointment to go hunting and left with a party after breakfast time. But when they reached their destination he did not undertake to hunt. He appeared pale and sick and after a few minutes was brought back to his home. On his return there he was in such agony that it was impossible to pull his boots off; so they had to be cut off. The medical testimony shows the following: On the day of the happening he complained to his physician of pain over his left hip region and was unable to turn either way or sit up without rather severe pain. The next day it was found that “he had tenderness to pressure over the left sacroiliac joint”, which is “situated in the lower back” and “tenderness at the inferior border of the gluteus muscle on the left side ’ ’; that his reflexes were
 
 *30
 
 diminished on that side; and that there was evident pain on stretching the left sciatic nerve. He continued to have pain in the “left hip region” and a few days later he had a mottled blueness on his left hip “as if there had been some bleeding underneath somewhere.” The attending physician diagnosed his case as “hematoma in the area of the sciatic notch on the left side and muscle strain on the left side involving the left hip.” Maynard was in apparent good health when he went to work the night in question. He'never worked afterwards and lost weight to extent of 25 pounds or more, between, his injury and death. His fellow workman testified that he and Maynard had never handled any roll “like that” either during the shift on that night or during the previous two months that they had worked together.
 

 In each of two compensation cases decided by this court
 
 (Industrial Commission
 
 v.
 
 Franken,
 
 126 Ohio St., 299, 185 N. E., 199, and
 
 Matczak
 
 v.
 
 Goodyear Tire & Rubber Co.,
 
 139 Ohio St., 181, 38 N. E. [2d], 1021) in which the claimed injury was sustained while lifting a heavy object, this court denied compensation, grounding its decision upon the principle that an employee’s injury to be compensable must be “accidental in origin and cause.”
 

 In the subsequent case of
 
 Malone
 
 v.
 
 Industrial Commission,
 
 140 Ohio St., 292, 43 N. E. (2d), 266. this court was confronted with Section 1465-68, General Code, in which the following addition was incorporated by amendment (117 Ohio Laws, 109):
 

 “The term ‘injury’ as used in this section and in the Workmen’s Compensation Act shall include any injury received in the course of, and arising out of, the injured employee’s employment.”
 

 In the
 
 Malone ease
 
 the evidence showed that Malone in his work was subjected to a high degree of ártificial heat and as a result collapsed from heat prostration
 
 *31
 
 from' which he died a few hours later. It was held that under Section 1465-68 it was sufficient if the injury was ‘ ‘ accidental in character and result ’ ’ and that the plaintiff had a right to maintain the action.
 

 The statute does not expressly require the injury to be accidental. Neither is it expressly required therein that there be a causal connection between the injury and the employment. Yet there is-the express provision that the injury must be received in the course of and arise out of the employment. This essential cannot exist without such causal connection and, in turn, causal connection cannot exist unless the injury is accidental in character and result.
 

 The evidence in the case at bar warrants an inference that there was an injury within the meaning of the statute and that such injury was received in the course of and arose out of the employment. This precise question was therefore one for the jury.
 

 As between the injury and the death, causal connection alone is not sufficient. The injury must be a proximate cause of the death.
 
 Weaver
 
 v.
 
 Industrial Commission,
 
 125 Ohio St., 465, 181 N. E., 894;
 
 Aiken
 
 v.
 
 Industrial Commission,
 
 143 Ohio St., 113, 53 N. E. (2d), 1018.
 

 The evidence shows that the hematoma, which is a swelling that comes from an effusion and gathering of blood beneath the skin, was an ideal culture medium for bacteria that were in the system awaiting an opportunity to multiply and manifest themselves in a definite disease. Two cultures of blood were made at the hospital which showed the presence of an organism known to the medical profession as streptococcus hemolyticus. The certificate of death contains this recital : “The principal cause of death and.related causes of importance in order of onset were as follows: Bacterial endocarditis — hemolytic streptococcus.” An inference arises that streptococci fostered by the cul
 
 *32
 
 ture medium afforded by the hematoma entered the blood stream and caused total breaking up of the heart’s action and death. The question whether the injury was the proximate cause of death was for the determination of the jury.
 

 The Court of Common Pleas committed prejudicial error in entering judgment for the defendant as a matter of law and the Court of Appeals did not commit error in reversing such judgment and remanding the cause to the Court of Common Pleas for further proceedings.
 

 The judgment of the Court of Appeals is therefore affirmed.
 

 Jtidgment affirmed.
 

 Weygandt, C. J., Matthias, Hart, Zimmerman and Turner, JJ., concur.